**LIQUID CARRIERS CORPORATION,**
Plaintiff-Appellant,

v.

**AMERICAN MARINE CORPORATION,**
Defendant-Appellee.

**No. 371, Docket 30161.**

United States Court of Appeals
Second Circuit.

Argued May 10, 1966.

Decided Feb. 28, 1967.

Foley & Martin, New York City (Christopher E. Heckman, Richard E. Meyer, New York City, of counsel), for plaintiff-appellant.

David R. Hyde, Cahill, Gordon, Reindel & Ohl, Mathias E. Mone, New York City, for defendant-appellee.

Before WATERMAN, KAUFMAN and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

Liquid Carriers Corporation (Liquid Carriers) brought suit for an alleged breach of contract against American Marine Corporation (American Marine) in New York Supreme Court, New York County. Service of summons and complaint was made upon the defendant on January 5, 1965 by personal service in New Orleans, Louisiana. The defendant then removed the action to the United States District Court for the Southern District of New York on the ground of diversity of citizenship and, alleging lack of personal jurisdiction over it in New York, moved under Rule 12(b) Fed.R. Civ.P. to quash the service of process and to dismiss the complaint. The motion was granted and Liquid Carriers appeals from the order dismissing the complaint.

Liquid Carriers is a New York corporation having its principal place of business in New York City. American Marine is a Louisiana corporation having its principal place of business in New Orleans. American Marine has not qualified to do business in New York. It has no employees, agents, office or telephone listing in New York.

On February 21, 1963, Robert Wilchar, Vice President of American Marine, was in New York City for the purpose of discussing with a firm of New York ship brokers the possibility of obtaining construction work for the New Orleans shipyard. On that day he was put in contact with Liquid Carriers. Also, during that month and March and April, 1963, Wilchar was in New York City looking for other possible ship construction opportunities from other vessel owners. From the contact made with Liquid Carriers Wilchar obtained a $342,250 construction contract for his company to build a barge for carrying chemicals. During the negotiations leading up to the contract Wilchar remained in New York City on one occasion from March 4 through March 8, meeting with representatives of Liquid Carriers on at least five or six separate occasions. His last trip to negotiate with Liquid Carriers was on March 29, and after he returned

to New Orleans he executed the contract on behalf of American Marine in that city on April 6, 1963. The contract was then mailed to New York where it was executed by Liquid Carriers and returned to American Marine. Thereafter neither Mr. Wilchar nor any other representative of American Marine went to New York on any business whatever that was connected with the contract.

The contract provided that American Marine would build a chemical-carrying barge for Liquid Carriers in accordance with agreed-upon plans and specifications. The entire construction was to take place at American Marine facilities in Louisiana and the completed barge was to be delivered to Liquid Carriers there. As agreed, the barge was built in Louisiana by American Marine and it was there delivered to Liquid Carriers. The contract also provided that the "agreement and all amendments thereto shall be deemed to have been entered into pursuant to and shall be governed by the laws of the State of New York."

■ The jurisdiction of a federal district court over an action removed from a state court under 28 U.S.C. § 1441 depends upon the jurisdiction of the state court before the removal. If the state court lacked jurisdiction, the federal court acquired none, Lambert Run Coal Co. v. Baltimore & O. R. R., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922); Venner v. Michigan Cent. R. R., 271 U.S. 127, 131, 46 S.Ct. 444, 70 L.Ed. 868 (1926). So here, if the state court lacked jurisdiction the motion to dismiss the action was properly granted below. We must therefore determine whether the New York Supreme Court from which the action was removed acquired jurisdiction over American Marine before the removal.

There are two possible bases upon which the New York Supreme Court

might have obtained jurisdiction over American Marine. These bases are contained in New York CPLR Sections 301 and 302. If jurisdiction was properly obtained under either of these sections the personal service made on American Marine in Louisiana was a valid service under New York CPLR Section 313, and American Marine was properly before the New York court.

■ CPLR Section 301 grants New York courts "such jurisdiction over persons, property, or status as might have been exercised heretofore." In the case of foreign corporations not authorized to do business in New York, New York decisional law has subjected to New York personal jurisdiction those foreign corporations that are "doing business" in New York, i. e., that are carrying on systematic and regular activities within the state. Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915 (1917). But casual or occasional activities such as mere solicitation of orders in New York has been held not to constitute "doing business" within the state under CPLR Section 301. See Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S. 2d 318, 151 N.E.2d 874 (1958). We believe the New York courts would hold that American Marine is not subject to the jurisdiction of New York courts under CPLR Section 301 because the occasional visits of Mr. Wilchar to New York to solicit business and to negotiate contracts for American Marine were not sufficiently regular or extensive for the New York courts to hold that American Marine is "doing business" in the state. In fact, appellant has not contended that American Marine should be subjected to New York jurisdiction on that basis.

■ The New York "long arm" statute, CPLR Section 302,[1] is the other pos-

---

1. When this action was pending before the New York Supreme Court prior to its removal to the U.S. District Court, CPLR Section 302 in its entirety read:

■

§ 302. Personal jurisdiction by acts of non-domiciliaries

(a) Acts which are the basis of jurisdiction. A court may exercise person-

sible basis for jurisdiction. At the time this action was commenced Section 302 (a) provided in pertinent part:

§ 302. Personal jurisdiction by acts of non-domiciliaries

(a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:

1. transacts any business within the state * * *.

There is an obvious distinction between one who "transacts any business" in New York and one who is "doing business" in New York. Appellant's main contention is that Mr. Wilchar's aforementioned visits to New York to negotiate the contract between American Marine and Liquid Carriers were transactions of business within the meaning of CPLR 302(a) 1 and thus subjected American Marine to the jurisdiction of the New York courts.

The New York Court of Appeals in the leading case of Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E. 2d 68 (1965) interpreted CPLR Section 302(a) 1 in a similar situation and there found a "transaction of business" to support personal jurisdiction based upon:

* * * substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines, priced at the not inconsiderable sum of $118,000; and the rendition of services over a period of some three months by two of the appellant's top engineers in supervising the installation and testing of the complex machines. 15 N.Y.2d at 457, 261 N.Y.S.2d at 19, 209 N.E.2d at 75.

The court went on to say:

We need not determine whether any one of the foregoing activities would, in and of itself, suffice to meet the statutory standard; in combination they more than meet that standard. 15 N.Y.2d at 458, 261 N.Y.S.2d at 19, 209 N.E.2d at 76.

On the other hand, in Kramer v. Vogl, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966) where no representatives of the defendant were physically present in New York, the Court of Appeals found there was not a "transaction of business" within the state when the only solicitation was by out-of-state mailings.

This court and lower New York state courts have faced a number of situations

al jurisdiction over any non-domiciliary, or his executor or administrator, as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
1. transacts any business within the state; or
2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
3. owns, uses or possesses any real property situated within the state.
(b) Effect of appearance. Where personal jurisdiction is based solely upon this section, an appearance does not confer such jurisdiction with respect to causes of action not arising from an act enumerated in this section.
The section became effective on September 1, 1963 after Mr. Wilcher's visits to New York, but it has been held to apply retroactively to acts performed before this date if service of process was made after the statute became effective. Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). Section 302 has since been amended, effective September 1, 1966; but the amendments do not apply to this case, nor would they affect the result we reach here even if they were held to be applicable.

between the extremes described in Longines-Wittnauer Watch Co. v. Barnes & Reinecke and Kramer v. Vogl, see e. g., Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir. 1965); A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 266 N.Y.S.2d 289 (1966); Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (Sup.Ct.1964), aff'd 23 A.D.2d 823, 258 N.Y.S.2d 376 (1965), but we have found no case dealing with the precise fact situation presented here. We must now decide the question left open in Longines-Wittnauer Watch Co. v. Barnes & Reinecke of whether the substantial preliminary negotiations, conducted in New York by one of the high-level personnel of American Marine over a period of two months, but unaccompanied by the other activities that were present in *Longines-Wittnauer* after execution of the negotiated contract are enough to meet the statutory requirements for transaction of business under CPLR Section 302(a) 1.

■■■■ It is our belief that the New York courts would hold that these activities which American Marine's vice-president engaged in within New York were sufficient to meet the statutory requirement of CPLR Section 302(a) 1. While this section has not been interpreted as extending New York's jurisdiction over non-domiciliaries as far as the United States Constitution allows,[2] see Kramer v. Vogl, 17 N.Y.2d 27, 32, 267 N.Y.S.2d 900, 904, 215 N.E.2d 159 (1966); A. Millner Co. v. Noudar, Lda., 24 A.D.2d 326, 329, 266 N.Y.S.2d 289, 292 (1966); United States v. Montreal Trust Co., 358 F.2d 239, 242 (2 Cir. 1966), it has been construed so as to

find a transaction of business in cases where a defendant's agents or property have been physically present in the state and have received the protection of New York laws. See A. Millner Co. v. Noudar, Lda., supra; Buckley v. Redi-Bolt, Inc., 49 Misc.2d 864, 268 N.Y.S.2d 653 (Sup.Ct.1966); Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (Sup.Ct.1964), aff'd 23 A.D.2d 823, 258 N.Y.S.2d 376 (1965).

In A. Millner Co. v. Noudar, Lda., supra, the defendant, a Portuguese exporter of olives and other food products, contracted with plaintiff to sell defendant's products in the United States on a commission basis. In a suit for breach of this contract, the Appellate Division, 1st Department, held that there was jurisdiction over the defendant under CPLR Section 302(a) 1 based on New York acts of defendant's officers in aiding plaintiff to sell defendant's products. It was not specified how many times defendant's officers came to New York or how long they remained there; it was considered to be enough to subject the corporation to New York jurisdiction that its officers entered New York State in order to further the business of their corporation.

Buckley v. Redi-Bolt, Inc., supra, was an action for damages for personal injuries sustained when a ski-lift on which plaintiffs were riding collapsed. Defendant, a foreign corporation, manufactured an allegedly defective bolt or rod which was used in the construction of the ski-lift. It was held that there was jurisdiction over the defendant under CPLR Section 302(a) 1 based upon its purposeful activity in connection with

2. There cannot be serious doubt that New York's acquisition of jurisdiction over American Marine in this situation is permissible under the Fourteenth Amendment standard. It is clear that American Marine has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); see International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154,

90 L.Ed. 95 (1945). Although American Marine's acts within New York were of a transitory nature, they were sufficient to allow the courts of New York to exercise personal jurisdiction over it, for those acts have a direct relationship to the cause of action, see International Shoe Co. v. State of Washington, supra. Moreover, New York has a valid constitutional interest in enforcing the rights of New York residents, cf. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

the sale of its product within New York shown by the visits of its salesmen to the operator of the ski-lift and the solicitation of business within the state by catalogue and advertisement.

In Iroquois Gas Corp. v. Collins, supra, defendant was subjected to jurisdiction under CPLR Section 302(a) 1 because defendant's activities that related to the cause of action included the activities of "* * * defendant's agents, Wall and Harvey, [who] on two separate occasions spent several days in this State in furthering a contract to construct a pipe line across Niagara River. It is conceded that the defendant's agents inspected the construction site and engaged in other activities in reference to the alleged construction agreement." 248 N.Y.S.2d 494, 497. The court found that these activities were not casual visits but were purposeful acts within the state by which defendant "availed himself of the privileges of conducting business activities within the State, thus invoking the benefit and protection" of New York law, and so it held that the defendant must be considered to have been transacting business in New York within the meaning of the statute, CPLR Section 302(a) 1.

Similarly, in the present case, a high-level agent and officer of American Marine made three separate trips to New York over a period of two months to meet and negotiate with Liquid Carriers in connection with the contract involved in this suit. American Marine stood to derive considerable economic benefit from these excursions to New York. Because of the nature of the negotiations involving the complex technical problems of building a chemical-carrying barge, it is unlikely that the contract could have been negotiated otherwise than by such face-to-face meetings between the parties. Under the circumstances it is clear that American Marine's vice president purposefully entered New York state in connection with his corporation's dealings with Liquid Carriers and caused his corporation to be protected by New York law. The activities of American Marine's vice president within the state were sufficiently extensive and purposeful to constitute a transaction of business by American Marine under CPLR Section 302(a) 1 and to subject American Marine to the jurisdiction of the New York courts. The motion to dismiss for lack of jurisdiction should therefore have been denied.

Reversed and remanded.