MEDICAL SOCIETY OF THE STATE OF NEW YORK, Plaintiff,

v.

CONNECTICUT GENERAL CORPORATION; Cigna Health Corporation; Healthsource, Inc.; Healthsource Management, Inc.; Healthsource HMO of New York, Inc.; Connecticut General Life Insurance Company; and Cigna Healthcare of New York, Inc., Defendants.

Edgar Borrero, M.D. and Malcolm Gottesman, M.D., on Behalf of themselves and all others Similarly situated, Plaintiffs,

v.

Connecticut General Corporation; Cigna Health Corporation; Healthsource, Inc.; Healthsource Management, Inc.; Healthsource HMO of New York, Inc.; Connecticut General Life Insurance Company; and Cigna Healthcare of New York, Inc., Defendants.

Nos. 01 CIV. 8455(CSH), 01 CIV. 8456(CSH).

United States District Court, S.D. New York.

Oct. 26, 2001.

*MEMORANDUM OPINION
AND ORDER*

HAIGHT, Senior District Judge.

The complaints in these two cases, which have been designated by the defendants as related to each other, allege that the defendants (collectively, "CIGNA") denied them, or doctors belonging to the society, reimbursement for the provision of medically necessary services in violation of the New York unfair and deceptive trade practices and prompt payment statutes and in breach of contract. Plaintiffs in both cases initially filed suit in New York Supreme Court[1] alleging only state law causes of action. Defendants removed the cases to federal court on the grounds that the plaintiffs' claims arise under federal law because they are completely preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq* ("ERISA"). On September 11, 2001, the day after removal, defendants filed a request with the Judicial Panel on Multidistrict Litigation (the "MDL Panel") to transfer these cases to the Southern District of Florida for consolidation with MDL No. 1334 (the "MDL court") because they share common questions of fact with the dozens of actions brought by healthcare providers raising similar claims that have already been consolidated with that case.

Two days later, defendants moved to stay all proceedings in both cases pending the MDL Panel's decision on the requests to transfer. Plaintiffs in both cases partially oppose the stay motion.[2] They ob-

ject to a stay only insofar as it would prevent the Court from ruling on their motions to remand the cases to state court.[3] Plaintiffs argue that the Court is empowered, indeed obliged, to determine the paramount issue of subject matter jurisdiction before a decision is made by the MDL Panel to transfer the case to another federal court. Defendants counter that the interests of judicial economy and the purpose of the multidistrict statutory scheme[4] would be best served if the remand motion were decided by the same MDL court that has been addressing ERISA preemption in similar motions brought in the healthcare provider cases that have been transferred to it by the MDL Panel.

■ As a court of limited jurisdiction, this Court cannot proceed to the merits of a case unless it possesses the requisite subject matter jurisdiction. *See Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 101–02, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). It follows that when the question of subject matter jurisdiction is raised, this Court must normally resolve it as a preliminary matter before taking any other action in the case. *Id.* at 94, 118 S.Ct. 1003 (jurisdiction is a "first and fundamental question" that a court is "bound to ask and answer for itself") (quotations omitted). While this is generally true, the question I face here presents a slightly unusual circumstance: the pendency of a jurisdictional question when there is a possibility that the case will be

---

1. *Borrero* was filed as a class action complaint.

2. The plaintiffs' papers in both cases are virtually identical.

3. The motions to remand were filed on October 4, 2001. As of the date hereof, they are not yet ripe for decision.

4. 28 U.S.C. § 1407(a) provides for the transfer of actions with one or more common questions of fact to a single district for coordinated pretrial proceedings.

transferred to another court under the MDL scheme.

There is no doubt that despite the request to transfer, I remain empowered to decide pending remand motions. *See* Rules of Procedure of the JPML R. 1.5. Yet, it is equally within this Court's power to decline to decide a motion which challenges this Court's subject matter jurisdiction while awaiting the MDL Panel's decision on transfer. *See, e.g., Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1046–47 (E.D.Wis.2001) (staying consideration of existence of federal question pending decision on transfer by MDL Panel; "granting a stay is not adjudicating the merits of a case"); *Aikins v. Microsoft Corp.,* No. Civ.A.00–0242, 2000 WL 310391, *1 (E.D.La. March 24, 2000) (declining to decide motion to remand pending MDL Panel transfer decision because "the same jurisdictional questions raised here will likely be raised in many of the other cases pending against Microsoft. Consistency and economy are both served by resolution of these issues by a single court after transfer ...."); *Johnson v. AMR Corporation,* Nos. 95 C 7659 to 95 C 7664, 1996 WL 164415, *3–4 (N.D.Ill. April 3, 1996) (staying ruling on jurisdictional motion pending MDL Panel's ruling on request to transfer case).

The Second Circuit has not only made it clear that a case may be transferred under the multidistrict litigation statute even after a jurisdictional challenge has been lodged, but has also intimated that allowing the transferee court to resolve the jurisdictional question may be the preferable practice. *See Ivy v. Diamond Shamrock Chemicals Co.,* 901 F.2d 7 (2d Cir.1990). In *Ivy,* the MDL Panel had transferred a removed case to the judge handling multidistrict Agent Orange litigation despite the fact that a motion to remand to state court was *sub judice* before

the transferor court. The transferor court had in fact declined to rule on the remand motion pending the MDL Panel's decision. After transfer, the plaintiffs sought a writ of mandamus directing the MDL Panel to vacate the transfer order on the ground that no subject matter jurisdiction existed. The Second Circuit viewed the sole issue before it as "the merits of the transfer viewed against the purposes of the multidistrict statutory scheme, whether or not there is a pending jurisdictional objection." *Id.* at 9. Weighing these considerations, the court easily found that the transfer was "entirely unobjectionable." *Id.* In the court's view, the jurisdictional challenge should not have short-circuited the otherwise advisable transfer:

> Agent Orange cases are particularly well-suited for multidistrict transfer, even where their presence in federal court is subject to a pending jurisdictional objection. The jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation. That issue, however, involves common questions of law and fact, some or all of which relate to the Agent Orange class action and settlement, and there are *real economies* of transferring such cases to Judge Weinstein, who has been handling the Agent Orange litigation for several years.

*Id.* (citations omitted; emphasis added). Underscoring the significance of the multidistrict scheme, the court recognized that if such a case is transferred:

> [T]he jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course. *Consistency as well as economy is thus served.* We hold, therefore, that the MDL Panel has jurisdiction to transfer a case in which a jurisdictional objec-

tion is pending, that objection to be resolved by the transferee court.

*Id.* (citations omitted; emphasis added).

■ The same considerations drive my decision whether to stay any ruling on plaintiffs' remand motions. The question is not whether there will be a decision on the jurisdictional issue, but rather which court is in the best position to decide it—this Court or the MDL court. If the underlying jurisdictional issue involved questions of law or fact not bound up with those involved in the multidistrict healthcare litigation, or if it were fairly obvious—such as whether the parties were completely diverse—my preference would be to rule on jurisdiction in the first instance and not wait for the MDL Panel's transfer decision. *Cf. Vasura v. Acands,* 84 F.Supp.2d 531, 532–33 (S.D.N.Y.2000) (Haight, J.) (noting that this Court had received permission from MDL Panel to decide remand motion in transferred asbestos case; motion involved diversity jurisdiction and status of one defendant under Foreign Sovereign Immunities Act). However, the jurisdictional question at hand is a complicated one involving the application of ERISA preemption to the multiple state law claims asserted. This is an issue which the MDL court has previously addressed on numerous occasions in the healthcare cases involving at least facially similar claims. *See In re Managed Care Litigation,* 135 F.Supp.2d 1253, 1268–69 (S.D.Fla.2001) (holding that ERISA did not preempt plaintiffs' contract claims but allowing plaintiffs to replead state prompt pay statute claims); *Blackshear v. United Healthcare of Florida, Inc.,* MDL No. 1334, 2000 WL 1925080 (S.D.Fla. May 4, 2001) (attached as Exhibit B to Plaintiffs' Memoranda in Partial Opposition) (remanding case to state court because state breach of contract and statutory violation claims were not preempted by ERISA); *Cutler v. Humana Medical Plan Inc.,* No. 00–6301 (S.D.Fla. March 7, 2001) (attached as Exhibit C to Plaintiffs' Memoranda in Partial Opposition) (same). The MDL court is therefore familiar with both the law of ERISA preemption and its intersection with the types of state law claims such as those that plaintiffs have brought. Permitting the MDL court to decide the preemption issue (assuming the case is transferred) would minimize the duplication of judicial resources and promote in those decisions uniformity and consistency—the foundation of both ERISA and the multidistrict statutory scheme.

Here, as in *Ivy,* there are significant economies in having a single court decide a jurisdictional question which has arisen and presumably will continue to arise in cases around the nation. Moreover, plaintiffs have not demonstrated any prejudice in the event of a stay except the slight delay in deciding the remand motion. Accordingly, I will hold the transfer motions in abeyance until the MDL Panel rules on the defendants' transfer requests. I will, however, allow the parties to complete the briefing of the motions so that either this Court or the transferor court, as the case may be, will be in a position to resolve them promptly once the transfer decision is made.

The above-captioned cases, including the remand motions, are hereby placed on the Court's suspense docket until the parties notify the Court that the MDL Panel has made its decision on transfer.

The foregoing is SO ORDERED.